# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARTIN LUTHER PEYNADO**, : | CIVIL ACTION NO. 1:09-CV-0355 |
| Plaintiff : | |
| : | **(Judge Conner)** |
| v. : | |
| : | |
| **MARY SABOL, DOCTOR YOUNG,** : | |
| **DONALD L. REIHART, MICHAEL W.** : | |
| **FLANNELLY, CHARLES R. NOLL,** : | |
| **DOUG HOKE, CHRISTOPHER B.** : | |
| **REILLY, STEVE CHRONISTER, and** : | |
| **ROGER THOMAS,** : | |
| Defendants : | |

## MEMORANDUM

Plaintiff Martin Luther Peynado ("Peynado"), formerly a detainee of the Bureau of Immigration and Customs Enforcement detained at the York County Prison, filed this civil rights action on February 26, 2009, alleging "deliberate indifference when prison officials delayed treatment "for his heart condition." (Doc. 1, at 1.) Presently pending are motions for summary judgment filed on behalf of defendant Dr. William Young ("Young") (Doc. 27) and York County defendants Warden Mary Sabol ("Sabol"), Deputy Warden Steiner ("Steiner"), Donald L. Reihart ("Reihart"), Michael Flannelly ("Flannelly"), Charles L. Noll ("Noll"), Doug Hoke ("Hoke"), Christopher Reilly ("Reilly"), Steve Chronister ("Chronister"), and Roger Thomas ("Thomas") (Doc. 30). For the reasons set forth below the motions for summary judgment will be granted.

**I.  Statement of Facts**

The facts are largely undisputed.¹ Upon his initial arrival at the York County Prison on August 28, 2007, Peynado received a medical screening, at which time it was noted that he was on Isordil, a heart medication. (Doc. 29, at ¶¶ 2, 3.) On February 18, 2008, defendant Young discontinued the Isordil because, in his professional medical opinion, it was not necessary. (Id. at ¶¶ 4-7.) The next day, Peynado requested to speak to a doctor about the decision to discontinue the Isordil. (Id. at ¶ 8.) He was seen on February 20, at which time it was explained to him that defendant Young discontinued the medication because it was not medically necessary. (Id. at ¶ 9.) On February 21, 2008, he submitted a second sick call request concerning the discontinuance of the medication. It was noted that the

---

¹In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, who is the nonmoving party. See infra Part II. Local Rule 56.1 requires the nonmoving party's statement of facts to respond to the numbered paragraphs set forth in the moving party's statement, and to "include references to the parts of the record that support the statements." L.R. 56.1. Peynado has failed to file a proper statement disputing defendants' statements of material facts, despite being afforded a number of opportunities to do so. (See Docs. 33, 35, 37, 38.) Therefore, with the exception of those facts clearly disputed by Peynado *and* supported by adequate record references, the court will adopt defendants' statements of fact. See L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); see also Harrison v. Ammons, Civ. A. No. 1:05-CV-2323, at *1, n.1 (M.D. Pa. Aug. 19, 2009) (Conner, J.) (adopting moving party's statement of facts when non-movant failed to comply with Local Rule 56.1); Novinger Group, Inc. v. Hartford Life & Annuity Ins. Co., Civ. A. No. 1:06-CV-0188, 2008 WL 5378288, at *1 n.2 (M.D. Pa. Dec. 23, 2008) (Conner, J.) (same); United States ex rel. Paranich v. Sorgnard, 286 F. Supp. 2d 445, 447 n.3 (M.D. Pa. 2003) (Conner, J.) (same), aff'd, 396 F.3d 326, 330 & n.5 (3d Cir. 2005).

2

issue had been "taken care of." (Id. at ¶ 10.) A few days later, he filed a third request. (Id. at ¶ 11.)

On February 26, 2008, he was experiencing chest pain and requested medical attention. (Id. at ¶ 12.) He was evaluated in the medical department on that same day and an ECG was administered.[2] (Id. at 13.) His vital signs were normal and the ECG, which was read by defendant Young, was also normal. (Id. at ¶¶ 13-14.) Thereafter, he was placed in a medical cell for monitoring. (Id. at ¶ 15.) Between February 27 and 29, he was evaluated eight times. (Id. at ¶ 16.) He was also asked to sign a release so that his medical records could be obtained from the Adams and Perry County prisons. (Doc. 29, at ¶ 17.) He refused. (Id.) On February 29, 2008, a second ECG was administered and Peynado was "cleared" and medical observation was discontinued. (Id. at ¶¶ 18-19.) The medical records do not establish that Peynado had a mild heart attack or complained of symptoms that would suggest a mild heart attack during February of 2008. (Doc. 32-2, at ¶ 7.)

On March 2, 2008, he filed another sick call request complaining of chest pain, which was received in the medical department on March 3, 2008. (Id. at ¶ 20.) His vital signs were checked and he was given another ECG. (Id. at ¶ 21.) He also informed medical staff that he had a Thalium Stress Test while he was incarcerated at the Perry County Prison in 2007, but refused to sign a medical release form which would enable the medical department to obtain and review his past medical

---

[2]An electrocardiogram (ECG) is a test that records the electrical activity of the heart. http://www.nlm.nih.gov/medlineplus/ency/article/003868.htm

3

records. (Id.) The following day, defendant Young read the ECG and reviewed the results of the 2007 stress test, all of which further confirmed that Isordil was not medically necessary. (Id. at ¶ 23.)

Peynado was seen again on March 10, 2008, with complaints of chest pain. (Id. at ¶ 24.) There was a finding of "non cardiac chest pains." (Id.) On March 25, 2008, he again presented to the medical department with chest pains. His vital signs were checked and an ECG was taken. (Id. at ¶¶ 25, 26.) No treatment was indicated. (Id. at 26.) On March 29, 2008, Peynado was provided a thirty-day prescription of Nitro for complaints of chest pain.[3] (Id. at ¶ 28.)

He was also seen in the medical department on September 15, 2008, for complaints of chest pain. (Id. at ¶ 29.) An ECG was administered and resulted in normal findings. (Id. at ¶ 30.) Peynado was given Naprosyn for pain. (Id. at ¶ 29.)

Prior to initiating the instant action on February 26, 2009 (Doc. 1), Peynado utilized the prison complaint review system, which included filing a complaint with the complaint supervisor, an appeal of the complaint supervisor's response to the deputy warden, and a request for solicitor's review, which resulted in a hearing. (Doc. 32, at ¶¶ 2-7.) In addition, his complaint was investigated and it was concluded that the complaint was without merit. (Id. at ¶ 13.) Named as defendants based on their roles in the prison complaint review system are Sabol,

---

[3]Nitroglycerin spray and tablets are used to treat episodes of angina (chest pain) in people who have coronary artery disease (narrowing of the blood vessels that supply blood to the heart). See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000080

4

Steiner, Reihart, Flannelly, Noll, Hoke, Reilly, Chronister, and Thomas. (Doc. 1, at 2, "Parties" ¶¶ 3-9.)

## II. Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

5

> secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

### A. Inadequate Medical Care Claim

At the time he filed the complaint, Peynado's status was that of an immigration detainee, rather than a convicted prisoner. Consequently, the Eighth Amendment is not applicable. See Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005) (reversing and remanding grant of summary judgment to prison officials on pretrial detainee's conditions of confinement claim because the district court improperly analyzed the claim under the Eighth Amendment rather than the Due Process Clause of the Fourteenth Amendment); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (stating that the Eighth Amendment applies only after the State has secured a formal adjudication of guilt in accordance with due process of law). The Due Process Clause rather than the Eighth Amendment is applicable in this case. Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987) (finding "[p]retrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause."). "The Due Process clause requires the government to provide appropriate medical care." Id.

The due process rights of detainees are "at least as great" as the Eighth Amendment protections available to convicted prisoners. See Simmons v. City of Phila., 947 F.2d 1042, 1067 (3d Cir. 1991); Brown v. Borough of Chambersburg, 903

6

F.2d 274, 278 (3d Cir. 1990); City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983). However, without determining how much more protection, if any, detainees are entitled to above the protection provided to convicted prisoners, the United States Court of Appeals for the Third Circuit has applied the standards enunciated in Eighth Amendment cases to medical claims by detainees. See Boring, 833 F.2d at 473; Natale, 318 F.3d at 581.

There is nothing in the record from which the court can conclude that defendant Young was deliberately indifferent to Peynado's serious medical needs. Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). Regarding medical mistreatment claims in particular, "[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); see also White v. Napoleon, 897 F.2d 103, 108 (3d Cir. 1990) (stating that mere medical malpractice cannot give rise to a violation of the Eighth Amendment). Only "unnecessary and wanton infliction of pain" or "deliberate indifference to the serious medical needs" of prisoners are egregious enough to rise to the level of a constitutional violation. White, 897 F.2d at 108-09 (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). Peynado does not allege that he was intentionally denied medical treatment for his pain. Rather, it is his position that he received inadequate treatment because defendant Young discontinued a prescription medication he desired. It is clear from the record that the medication was

7

discontinued because it was not medically necessary. Prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners. Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). Peynado's disagreement with defendant Young's decision regarding his treatment is not, by itself, sufficient to establish a violation of the Eighth Amendment. See Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (finding "mere disagreement as to the proper medical treatment" does not support a claim of an Eighth Amendment violation). Defendant Young is entitled to an entry of summary judgment.

Inasmuch as Peynado seeks to impose liability on the remaining defendants based on inadequate medical care, it has clearly been held that a prison official cannot be considered deliberately indifferent simply because he or she failed to respond to medical complaints of a prisoner who is being treated by medical personnel. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). The Durmer Court also reiterated the longstanding principle that "*Respondeat superior* is, of course, not an acceptable basis for liability under § 1983." Id. at n.14. There is no question that Peynado was under the care of a physician. While he takes issue with the quality of his care, he clearly acknowledges he was under treatment. Accordingly, under Durmer, the inadequate medical care claim against the remaining prison officials fails as a matter of law.

**B.     Due Process and Equal Protection Claims**

With respect to the due process and equal protection claims lodged against defendants Sabol, Steiner, Reihart, Flannelly, Noll, Hoke, Reilly, Chronister and Thomas, based on their involvement in the complaint review system, it is well-established that a defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003).  Significantly, prisoners do not have a constitutional right to prison grievance procedures.  See, e.g., Massey v. Helman, 259 F.3d 641, 647 (7th Cir.2001) (collecting cases).  Thus, defendants' involvement in the grievance procedure is not independently actionable.  Further, participation in the after-the-fact review of a grievance or appeal proceeding is not enough to establish personal involvement.  See Brooks v. Beard, 167 Fed. App'x. 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

It is clear that the claims against these defendants are based solely on their role in the complaint review system and not due to personal involvement in any unconstitutional conduct.  Consequently, defendants are entitled to an entry of summary judgment.

9

## IV. Conclusion

Based on the foregoing, defendants' motions for summary judgment (Docs. 27, 30) will be granted.

An appropriate order follows.

                                          S/ Christopher C. Conner
                                          CHRISTOPHER C. CONNER
                                          United States District Judge

Dated:        December 20, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARTIN LUTHER PEYNADO,** : | **CIVIL ACTION NO. 1:09-CV-0355** |
| Plaintiff : | |
| : | **(Judge Conner)** |
| v. : | |
| : | |
| **MARY SABOL, DOCTOR YOUNG,** : | |
| **DONALD L. REIHART, MICHAEL W.** : | |
| **FLANNELLY, CHARLES R. NOLL,** : | |
| **DOUG HOKE, CHRISTOPHER B.** : | |
| **REILLY, STEVE CHRONISTER,** and : | |
| **ROGER THOMAS,** : | |
| Defendants : | |

## ORDER

AND NOW, this 20th day of December, 2010, upon consideration of defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Docs. 27, 30), and in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. Defendants' motions (Doc. 27, 30) are GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

3. The Clerk of Court is directed to CLOSE this case.

4. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge